**LEWIS BRISBOIS BISGAARD & SMITH LLP**
THOMAS J. SPEISS, III, (Cal. Bar # 200949)
　E-Mail: tspeiss@lbbslaw.com
DANIEL C. DECARLO, (Cal. Bar # 160307)
　E-Mail: decarlo@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
T: (213) 599-7815
F: (213) 250-7900

Attorneys for Plaintiff,
Arthur Dogswell, L.L.C.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ARTHUR DOGSWELL, L.L.C., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BLUE BUFFALO COMPANY, LTD., a Delaware corporation,<br><br>　　　　Defendants. | Case No. CV-11-00028 CAS (PLAx)<br><br>The Hon. Christina A. Snyder<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT**<br><br>DATE: May 23, 2011<br>TIME: 10:00 a.m.<br>CTRM: 5 |

4812-2879-0537.6

1

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION. .................................................................................................1

II. PROCEDURAL HISTORY. .................................................................................1

III. BLUE BUFFALO HAS BEEN A NAMED DEFENDANT IN AT LEAST *18 SEPARATE AND KNOWN* ADMINISTRATIVE AND JUDICIAL PROCEEDINGS, WHERE IT IS ALLEGED TO HAVE VIOLATED OTHERS' TRADEMARK RIGHTS.........................2

    A.    TTAB Proceedings. ...........................................................................3

    B.    Judicial Proceedings..........................................................................5

    C.    The California Action. ......................................................................7

IV. BLUE BUFFALO'S WILLFUL VIOLATION OF DOGSWELL'S TRADEMARK RIGHTS ENTITLES DOGSWELL TO ITS ATTORNEY FEES AND ADDITIONAL DAMAGES. ...............................8

V. DOGSWELL'S PRIOR AND CONTINUING SETTLEMENT OFFERS ARE REASONABLE. .................................................................11

VI. CONCLUSION. .................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Atronic International, GmbH v. SAI Semispecialists of America, Inc.,*
  2006 U.S.Dist. LEXIS 66078 ................................................................... 11

*Bambu Sales v. Ozak Trading,*
  58 F.3d 849 (2nd Cir. 1995) ...................................................................... 9

*Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,*
  561 F.2d 1365 (10th Cir. 1977) ............................................................... 10

*Johnson & Johnson Consumer Cos., Inc. v. Aini,*
  540 F.Supp.2d 374 (E.D.N.Y. 2008) ........................................................ 9

*O'Brien International, Inc. v. Mitch,*
  209 U.S.P.Q. 212 (N.D. Cal. 1980) ........................................................ 11

*Playboy Enterprises, Inc. v. Baccarat Clothing Co.,*
  692 F.2d 1272 (9th Cir. 1982) ................................................................. 10

*Savin Corp. v. National Toner Warehouse, Inc.,*
  528 F.Supp. 636 (N.D. Ga. 1981) ........................................................... 10

**Docketed Cases**

*Zuke's, LLC v. Blue Buffalo Co., Ltd.,*
  Case No. 10-cv-02463-WDM-BNB ......................................................... 1

**Federal Statutes**

15 U.S.C. § 1051, *et seq* ................................................................................ 1, 6

15 U.S.C. § 1114 ......................................................................................... 1, 2, 6

15 U.S.C. § 1117 ............................................................................................... 9

15 U.S.C. § 1125 ............................................................................................... 6

Fed. R. Civ. P. 12(f) .......................................................................................... 9

**State Statutes**

Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq* ........ 1, 6

## I. INTRODUCTION.

Plaintiff, Arthur Dogswell, L.L.C. ("Dogswell") herein opposes Defendant, Blue Buffalo Company, Ltd.'s ("Blue Buffalo") frivolous Motion to Strike, which was designed, and has acted to, delay this action. Blue Buffalo filed its stand-alone Motion to Strike in order to delay this action (the "California Action"). Blue Buffalo desired to delay this action so that it could force Dogswell — which is the Plaintiff in the California Action and a newly-named Defendant in Third Party Defendant in *Zuke's, LLC v. Blue Buffalo Co., Ltd.*, Case No. 10-cv-02463-WDM-BNB (D. Colo. 2010) (the "Colorado Action") — to file its response to the Third Party Complaint in the Colorado Action *before* Blue Buffalo filed its response to the Complaint in the California Action.

## II. PROCEDURAL HISTORY.

The brief recapitulation of the procedural history is as follows.

*First,* on October 8, 2010, Zuke's LLC ("Zuke's") initiated the Colorado Action. In the Complaint, Zuke's alleges trade dress infringement and unfair competition arising under 15 U.S.C. § 1051, *et seq.*, and Colorado common law and based on violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*.

*Second*, on January 3, 2011, Dogswell filed this California Action against Blue Buffalo, alleging Trademark Infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and related claims.

*Third*, on February 1, 2011, Blue Buffalo filed its Third Party Complaint against Dogswell in the Colorado Action.

*Fourth*, on March 11, 2011, Zuke's, Blue Buffalo and Dogswell attended Court-ordered mediation in the Colorado Action.

*Fifth*, on April 18, 2011, Blue Buffalo filed its Motion to Strike in the California Action.

*Sixth*, and last, on April 21, 2011, Dogswell filed its Answer and Cross-Complaint against Blue Buffalo in the Colorado Action, alleging Trademark Infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and related claims.[1]

### III. BLUE BUFFALO HAS BEEN A NAMED DEFENDANT IN AT LEAST *14 SEPARATE AND KNOWN* ADMINISTRATIVE AND JUDICIAL PROCEEDINGS, WHERE IT IS ALLEGED TO HAVE VIOLATED OTHERS' TRADEMARK RIGHTS.

In its Complaint in the California Action, Dogswell alleges that,

> "Blue Buffalo has a history of copying other pet food and pet treat companies and now has infringed Dogswell's trademarks and trade dress in an obvious attempt to trade off of and profit from Dogswell's consumer goodwill and reputation in the pet treat and pet food marketplace as an industry leader and source for high-quality pet treat and pet food products."

(*See* Compl., Dkt 1, at ¶ 4.) Dogswell pled this allegation because Blue Buffalo has a history of intentionally and deliberately copying, imitating, disrespecting, trampling over, and infringing upon the intellectual property rights of others, in order to trade upon and profit from these other companies' goodwill.

In fact, since August 24, 2005, Blue Buffalo has been named as a defendant in at least *14 separate and known* administrative actions filed in front of the Trademark Trial and Appeal Board ("TTAB") and Federal judicial actions — including the California Action — wherein at least a dozen other businesses, at least four of which are Blue Buffalo's direct competitors, have asserted that Blue Buffalo has violated their trademark rights.[2]  Several of the known actions are discussed below.

---

[1] Pending the status of the Colorado Action, Dogswell may move to stay, transfer, consolidate or otherwise seek Court assistance regarding the disposition of the California Action.

[2] Other disputes may exist. Dogswell has filed a separate Request for Judicial Notice ("RJN") concerning these disputes. In its RJN, Dogswell requested that judicial notice be taken of each of the 13 other actions.

### A. TTAB Proceedings.

Since August 24, 2005, Blue Buffalo has been named as a defendant in numerous administrative actions filed in front of the Trademark Trial and Appeal Board ("TTAB"), including, *inter alia*, by 3681441 Canada, Inc.; NFL Properties, Inc. and the Buffalo Bills Company, LLC; Harmony Foods Corp.; Ole Blue, Inc.; Merrick Pet Care; and, Blue Dog Bakery Company. These matters include the following administrative proceedings.

*First*, on April 18, 2007, Old Blue, Inc. ("Old Blue") filed an Opposition to the registration of Blue Buffalo's. U.S. App. No. 78/484,170, for "Old Blue's Barbeque," for "Cat food, dog biscuits, dog food, edible cat treats, edible dog treats, and pet food." In the Opposition, which is TTAB Opp. No. 91/176,846, Old Blue states as follows,

> ". . . confusion as to source or affiliation is also likely as the goods listed in Applicant's application overlap with and are likely to be offered in the same retail stores and channels of trade as Opposer's goods sold under the 'OLD BLUE' mark."

(*See* the Declaration of Thomas J. Speiss, III, in Support of Plaintiff's: (1) Opposition to Defendant's Motion to Strike Portions of the Complaint; and, (2) Request for Judicial Notice ("Speiss Dec."), **Ex. 1**, at ¶ 7.) Blue Buffalo filed an <u>Express Abandonment</u> of Trademark Application after an *inter partes* decision by the TTAB. (*See id.*)

*Second*, on February 13, 2008, Merrick Pet Care, Inc. ("Merrick") filed a First 30 Day Request for Extension of Time to Oppose the registration of Blue Buffalo's U.S. App. No. 77/101,895, for "Blue Wilderness Diet" for "Cat food, dog biscuits, dog food, edible cat treats, edible dog treats, and pet food." The application was abandoned after publication because Blue Buffalo filed another Request for <u>Express Abandonment</u>. (*See id.*, **Ex. 2**.)

*Third*, on January 23, 2006, 3681441 Canada Inc. ("Canada") filed a Notice of Opposition (the "Opposition") to the registration of Blue Buffalo's U.S. App. No.

76/565,250, for "Blue Buffalo," for several goods, including, *inter alia*, animal nutritional and performance supplements, printed matter, pet equipment, beverage can holders, toys and games, and retail stores. In the Opposition, which is TTAB Opp. No. 91/168,778, Canada states as follows,

> "Notwithstanding [Canada's] prior established rights in and to the BUFFALO Marks, [Blue Buffalo] filed an application with the United States Patent and Trademark Office to register the mark BLUE BUFFALO. . . . [Blue Buffalo] knew or had reason to know of [Canada's] prior rights in the BUFFALO Marks when [it] filed its Application. . . . Likelihood of confusion is enhanced by the fact that [Canada's] goods and [Blue Buffalo's] goods and services will likely be sold through the same trade channels to the same classes of prospective purchasers [and the parties] advertise their goods and services in the same or similar types of media."

(*See id.*, **Ex. 3**, at ¶¶ 7, 9, 12 and 13.) Blue Buffalo subsequently abandoned its application.



*Fourth*, on August 29, 2005, Buffalo Bills, Inc. and NFL Properties LLC filed their Request for Extension of Time for Filing Notice of Opposition to the registration of Blue Buffalo's U.S. App. No. 76/565,251, depicted above at right (and which looks remarkably similar to the Buffalo Bills football team's historic and current logo (both of which continue to marked on Buffalo Bills' merchandise), as depicted to the right and further below), for "animal nutritional and performance supplements." The Request was granted. The application subsequently was abandoned. (*See id.*, **Ex. 4**.)



*Fifth*, On May 29, 2008, 3681441 Canada Inc. ("Canada") filed an Opposition to the

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  registration of Blue Buffalo's U.S. App. No. 77/339,665, for a design containing the
2  term "Blue Unsurpassed Nutrition Ultimate Protection. . . ." In the Opposition,
3  which is TTAB Opp. No. 91/184,347, Canada states,

> "The goods of [Canada] and [Blue Buffalo] are identical or so closely related that the public is likely to be confused, to be deceived and to assume erroneously that [Blue Buffalo's] goods are goods offered by [Canada], or that [Blue Buffalo] is in some way connected with, sponsored by, or affiliated with [Canada], all to [Canada's] irreparable damage."

8  (*See id.*, **Ex. 5**, at ¶ 10.) The parties subsequently filed a Stipulation to <u>delete</u> a
9  classification of goods and to <u>dismiss</u> the Opposition. (*See id.*)

10  *Sixth*, on June 27, 2008, Blue Dog Bakery Company filed a Notice of
11  Opposition to the registration of Blue Buffalo's U.S. App.
12  No. 77/339,665, depicted at right, for, *inter alia*, Dietary
13  supplements for animals, address books, and Dog biscuits;
14  Dog food; Dog treats; Cat food; Cat treats; Pet beverages;
15  Pet food; Pet treats. The parties settled the dispute and the
16  Opposition, which is TTAB Opp. No. 91/184,874, was
17  <u>dismissed</u>. (*See id.*, **Ex. 6**.)

18  *Seventh*, and last, on October 27, 2005, Harmony Foods Corporation filed its
19  First 90 Request for Extension of Time to Oppose for Good Cause concerning Blue
20  Buffalo's U.S. App. No. 78/484,190 for the mark "Harmony," for "Cat food, dog
21  biscuits, dog food, edible cat treats, edible dog treats, and pet food." The Request
22  was granted. The application subsequently was <u>abandoned</u>. (*See id.*, **Ex. 7**.)[3]

23  **B.   Judicial Proceedings.**

24  Since May 10, 2010, Blue Buffalo has been a defendant in two trademark
25  infringement actions, other than the California Action, as follows.

---

[3] Dogswell discusses the remaining TTAB administrative proceedings within the RJN. The other administrative proceedings are attached to the Speiss Dec. as **Exs. 10** through **13**.

*First*, on May 17, 2010, Merrick filed a trademark infringement action against Blue Buffalo in the Northern District of Texas (Amarillo), Case No. 10-cv-00115-J, alleging trademark infringement and unfair competition arising under 15 U.S.C. § 1114 (Trademark Infringement), 15 U.S.C. § 1125 (Unfair Competition and False Designation) and common law.  In the Complaint, Merrick alleges that Blue Buffalo's product names "Thanksgiving Feast," "Chicken Pot Pie" and "Turducken" are similar to Merrick's registered trademarks for its THANKSGIVING DAY DINNER® and GRAMMY'S POT PIE® pet food products.  In its Complaint, Merrick states as follows,

> "Blue Buffalo has recently begun promoting a product line with four (4) products called "Family Favorite Recipes." Three of the four products in the Family Favorite Recipes line bear similar names to the Merrick names listed above. The names used by Blue Buffalo are Thanksgiving Feast, Chicken Pot Pie and Turducken. . . . Blue Buffalo wrongfully appropriated names similar to Merrick's marks without permission or other authorization from Merrick."

(*See id.*, **Ex. 8**, at ¶¶ 12-13.)  In December 2010, the parties settled this matter, and it was dismissed. (*See id.*).

*Last*, on October 8, 2010, Zuke's filed the Colorado Action.  In the Complaint, Zuke's alleges trade dress infringement and unfair competition arising under 15 U.S.C. § 1051, *et seq.*, and Colorado common law and based on violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*  In that Complaint, Zuke's states as follows,

> "In the summer of 2010, Blue Buffalo entered into the natural moist dog treats space for the first time. . . . [T]he visual similarities between Zuke's [products and Blue Buffalo's products] represent a deliberate attempt by Blue Buffalo to trade on Zuke's reputation and goodwill as the leader in natural moist dog treats by creating confusion in the marketplace as to the source of Zuke's and Blue Buffalo's respective moist dog treats."

(*See id.*, **Ex. 9**, at ¶¶ 17-20.)  The suit between Zuke's and Blue Buffalo (which is the Colorado Action) remains pending. (*See id.*)

C. **The California Action.**

In the Complaint in the California Action, Dogswell alleges as follows,

> "Despite the limitless amount of other product names it could have chosen, it began to sell edible "Healthy Hips" dog treats without permission or authorization from Dogswell. . . . [T]he similarities between Blue Buffalo's product names and trade dress is a willful and deliberate attempt by Blue Buffalo: (1) to confuse the purchasing public as to the source of Dogswell's edible pet treat and pet food products and Blue Buffalo's dog treat products and, (2) to benefit from Dogswell's reputation and goodwill as the leading seller of edible pet treats and pet food."

(*See* Compl., Dkt 1, at ¶¶ 20, 27.) Dogswell further pled in the California Complaint that Blue Buffalo has engaged in willful and deliberate trademark infringement, and has copied Dogswell's entire product line, as follows.

*First*, since at least as early as April 2004, Dogswell has used its HAPPY HIPS® marks to sell its distinctive and well-known product line of HAPPY HIPS® pet treats and pet food (*see id.* at ¶¶ 12)[4];

*Second*, since 2005, Dogswell has sold its HAPPY HIPS®, MELLOW MUT® and VITALITY™ edible pet treats and pet food products throughout the United States in combination with packaging that the public has come to recognize as a distinctive and non-functional indicator of Dogswell's products (*see id.* at ¶¶ 12-21 and 23-25);

*Third*, in or about August of 2010, Blue Buffalo began selling edible "Healthy Hips" dog treats in the same size packaging, and in same marketing channels and points of distribution as Dogswell's HAPPY HIPS® pet treats, HAPPY HIPS® edible pet food, and HAPPY HIPS™ cat treats — without permission or authorization from Dogswell, and which mark is confusingly similar to HAPPY HIPS® (*see id.* at ¶¶ 21, 26-29):

- Blue Buffalo's "Healthy Hips" pet treat product packaging utilizes a slogan that is confusingly similar to Dogswell's "*Helps Maintain* . . . ." tagline

---

[4] This mark is now incontestable.

on its product packaging. The similarity on Dogswell's other long-standing and profitable pet treat brands, which are MELLOW MUT® and VITALITY®, are equally as stark, as follows:

| Dogswell Pet Treat/Tagline | Blue Buffalo Pet Treat/Tagline |
|---|---|
| HAPPY HIPS® — *Helps Maintain Healthy Joints* | "Healthy Hips" — *Helps Maintain Healthy Hips and Joints* |
| MELLOW MUT® — *Helps Maintain a Happy, Healthy Lifestyle* | "Tranquility" — *Helps Maintain a Happy, Healthy Lifestyle* |
| VITALITY™ — *Helps Maintain Eyes, Skin & Coat* | "Exuberance" — *Helps Maintain Healthy Eyes, Skin & Coat* |

■ Blue Buffalo further is likely to confuse the consuming public by its adoption and use of product names which create an overall commercial impression that is confusingly similar to the products of Dogswell, as follows:

| Dogswell Pet Treat Name | Blue Buffalo Pet Treat/Tagline |
|---|---|
| HAPPY HIPS® | "Healthy Hips" ("Healthy" and "Happy") |
| MELLOW MUT® | "Tranquility" ("Tranquil" and "Mellow") |
| VITALITY™ | "Exuberance" ("Exuberance" and "Vitality") |

(*See id.*) There can be no mistake: Blue Buffalo is a copy artist. Dogswell is Blue Buffalo's latest, and hopefully last, victim.

## IV. BLUE BUFFALO'S WILLFUL VIOLATION OF DOGSWELL'S TRADEMARK RIGHTS ENTITLES DOGSWELL TO ITS ATTORNEY FEES AND ADDITIONAL DAMAGES.

Blue Buffalo has requested that the Court strike a portion of paragraph 4 of Dogswell's Complaint ion the California Action. This portion states that: "Blue Buffalo has a history of copying other pet food and pet treat companies." (*See*

Compl., ¶ 4; *see, also, supra*, 2:4-16.) This paragraph should remain in the Complaint in the California Action in its entirety.

      Rule 12(f) of the Federal Rules of Civil Procedure state that a Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f). A Lanham Act case where the party's conduct is willful, deliberate, knowing, or malicious is exceptional within the meaning of 15 U.S.C. § 1117(a). The court in exceptional cases may award reasonable attorney fees, as well as additional damages, to the prevailing party. *See* 15 U.S.C. § 1117(a).

      Several cases have held that evidence of prior trademark infringement is admissible to prove willfulness. "[D]efendants had been sued in a similar trademark infringement case in the past. Accordingly, the district court, relying on the magistrate's report, committed no error in finding willfulness." *See Bambu Sales v. Ozak Trading*, 58 F.3d 849, 854 (2nd Cir. 1995); *see, also, Johnson & Johnson Consumer Cos., Inc. v. Aini*, 540 F.Supp.2d 374, 392 (E.D.N.Y. 2008) ("Defendants argue that the history of trademark infringement actions brought against them is inadmissible in this action because it constitutes character evidence under Rule 404(a) of the Federal Rules of Evidence. However, this evidence is admissible as evidence of, *inter alia*, intent and knowledge under Rule 404(b).") As stated by the Court in *Johnson & Johnson*,

> Moreover, the court takes notice that six (and possibly more) separate federal actions have been brought against some or all of the defendants in this action for trademark infringement. While these other cases alone do not definitively demonstrate that Defendants acted in bad faith here with respect to Plaintiff's trademark, they do present some evidence of Defendants' intent with respect to the AMBI Green and Red goods that they acquired and sold. At a minimum, these lawsuits should have served to instruct Defendants to exercise greater diligence in ensuring that the products they sold, particularly those they received from questionable sources, did not infringe on others' trademarks.

(*See Johnson & Johnson Consumer Cos., Inc. v. Aini, supra*, at 540 F.Supp.2d at 392.)

In addition to attorney fees, punitive damages are awarded in cases of willful trademark infringement. In most jurisdictions, punitive damages are awarded: (1) to punish one guilty of a willful wrong; (2) to make an example out of the defendant to others (hence exemplary damages); (3) to deter defendant from future misconduct; and, (4) as an approximate award to plaintiff of his expenses of litigation. *See, e.g., Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir. 1977) (six times actual damages upheld under Colorado law). *See, also, Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274-75 (9th Cir. 1982) ("[W]here trademark infringement is deliberate and willful . . . the trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party. . . . [I]t is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement"); *and, see, Savin Corp. v. National Toner Warehouse, Inc.*, 528 F. Supp 636 (N.D. Ga. 1981) (willful and deliberate infringement found where: (1) defendants used colorable imitation of plaintiff's registered trademark on their packaging; and, (2) evidence showed that defendant's sales presentation made to customers created impression that defendant was associated with plaintiff).

In conclusion, Blue Buffalo is a copy artist, and undoubtedly *is aware of its conduct*. Blue Buffalo has a history of examining its competition, sizing up what works (*e.g.*, what sells) — indeed, Dogswell is known throughout the pet food and pet treat industry as the HAPPY HIPS® company, meaning that its continuous use of its incontestable HAPPY HIPS® trademark is profitable to it — and then intentionally and deliberately copying, imitating, disrespecting, trampling over, and infringing upon others' intellectual property rights. There are *18 known instances* of Blue Buffalo's conduct in the past five (5) years. There may be other unknown instances, where a Blue Buffalo victim could not afford to complain of the infringement, or the matter was resolve prior to the filing of a TTAB administrative action or judicial proceeding.

This is an exceptional case, and attorney fees and other damages should be awarded. The evidence of the *17 other separate instances* of trademark infringement — in addition to the California Action — demonstrates Blue Buffalo's willful intent in adopting Dogswell's HAPPY HIPS® trademark and product line trade dress. Dogswell is Blue Buffalo's latest, and hopefully last, victim. Dogswell respectfully requests that the Court not strike any portion of paragraph 4 of Dogswell's complaint in the California Action.

## V. DOGSWELL'S PRIOR AND CONTINUING SETTLEMENT OFFERS ARE REASONABLE.

In its Complaint, Dogswell alleges that,

> "On August 30, 2010, Dogswell notified Blue Buffalo that Blue Buffalo is infringing Dogswell's federally registered HAPPY HIPS® trademarks and HAPPY HIPS™ trademark. On or about September 13, 2010, counsel for Blue Buffalo offered to withdraw Blue Buffalo's composite trademark application for, *i.e.*, 'Healthy Hips,' but stated that Blue Buffalo would otherwise continue to sell its 'Healthy Hips' dog treats. Subsequent settlement discussions were unsuccessful."

(*See id.* at ¶ 22.) While Blue Buffalo has requested that this paragraph be stricken, this paragraph should remain as part of the Complaint in the California Action. "Evidence of a settlement agreement and its surrounding circumstances though otherwise barred by Rule 408, can fall outside the Rule if it is offered for 'another purpose'. . . ." See *Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.*, 2006 U.S. Dist. LEXIS 66078 (E.D.N.Y. 2006).

Courts have considered a defendant's refusal of a plaintiff's reasonable settlement overtures as a factor supporting the award of attorney fees. In *O'Brien Int'l, Inc. v. Mitch*, 209 U.S.P.Q. 212 (N.D. Cal. 1980), plaintiff brought an action against defendant for infringement of plaintiff's WORLD TEAM® mark and globe and waterski logo. After plaintiff discovered defendant's infringement, it made two offers of settlement to defendant in which it proposed to waive its damages claim in exchange for defendant's immediate cessation of its infringing activity. The

defendant refused. The court held that under the circumstances the defendant should bear the burden of the expense of litigation because plaintiff had made a serious effort to settle the case without litigation.

Dogswell pled this paragraph to demonstrate that Blue Buffalo was on notice of Dogswell's claims as early as August 30, 2010, and refused to settle the action, despite the reasonableness of Dogswell's settlement offers. Dogswell respectfully requests that no portion of this paragraph be stricken.

## VI. CONCLUSION.

For the foregoing reasons, Dogswell respectfully requests that this Court deny Blue Buffalo's Motion to Strike in its entirety.

Respectfully submitted,

DATED: May 2, 2011

THOMAS J. SPEISS, III
LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _/s/ T. J. Speiss III_
Thomas J. Speiss, III
Attorneys for Plaintiff, Arthur Dogswell, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: May 2, 2011

_____
Thomas J. Speiss, III